# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

EXXON MOBIL CORPORATION,    )
    )
        Plaintiff,    )    Civil Action No.  1:16-cv-12504-WGY
    )
    vs.    )    Pending in the United States District Court
    )    For the Northern District of Texas
    )    Civil Action No.  4:16-CV-469-K
    )
ERIC TRADD SCHNEIDERMAN,    )    The Honorable William G. Young
ATTORNEY GENERAL OF NEW YORK, )
IN HIS OFFICIAL CAPACITY AND    )
MAURA TRACY HEALEY, ATTORNEY    )
GENERAL OF MASSACHUSETTS, IN    )
HER OFFICIAL CAPACITY,    )
    )
        Defendants.    )
    )
_____)


## PAWA LAW GROUP, P.C. AND MATTHEW PAWA'S MEMORANDUM OF LAW IN OPPOSITION TO EXXON MOBIL CORPORATION'S CROSS MOTION TO TRANSFER AND COMPEL

ExxonMobil ("Exxon") has issued broad subpoenas seeking discovery of a law firm that has a long history of representing and co-counseling with states against Exxon. Exxon seeks the law firm's communications with any attorney general office relating to *any* investigation of Exxon, a legal presentation by the law firm to attorneys general, and documents from the firm's attendance at meetings or events with citizens concerned about global warming.

The pretext for this invasion of an opponent law firm's privileged and confidential files is a Massachusetts Civil Investigative Demand ("CID"), issued by the Massachusetts Attorney General ("Mass AG") that Exxon is currently challenging in Massachusetts Superior Court. When Exxon tried to stop this Massachusetts law enforcement effort by suing the Mass AG in federal court in Texas, she objected that the proper venue was Massachusetts and that personal jurisdiction in Texas was lacking (among other arguments, all still pending). Without deciding these objections, the Texas court *sua sponte* ordered discovery as to whether the Mass AG acted in bad faith in the context of *Younger* abstention. Now, Exxon asks this Court to enforce burdensome subpoenas that improperly seek to intrude on privileged and confidential material and infringe First Amendment rights in any event – or to transfer this Massachusetts-based matter to Texas. The Court should do neither. It should quash these abusive subpoenas in their entirety and sanction Exxon.

## BACKGROUND

### I. Attorneys General Launch Investigations of Exxon.

In September 2015 the *Los Angeles Times* and *Inside Climate News* began publishing a series of articles, based upon newly unearthed Exxon documents, demonstrating that Exxon knew, in the late 1970s and early 1980s, that its fossil fuel products were contributing to a potentially "catastrophic" global warming and that reductions in the use of Exxon core products, fossil fuel, would be necessary. Pawa Decl. (1st) ¶ 10. The story has been heavily reported.[1]

---

[1] *See, e.g.,* Exxon Mobil Accused of Misleading Public on Climate Change Risks, *New York Times* (Oct. 30,

In 2015, the New York Attorney General's Office ("NYAGO") commenced an investigation of Exxon regarding statements that Exxon made to investors and the public regarding climate change and the impact of climate change on its business. *See* Pawa Decl. (2d) ¶ 15 & Exh. O ¶ 7 (Affirmation of NYAAG Srolovic). PLG attorneys did not assist in drafting the New York subpoena and were not aware of it until November 5, 2015, the date it was issued and announced publicly by the NYAGO. Pawa Decl. (1st) ¶ 14.

On March 29, 2016, a group of attorneys general offices – including Massachusetts Attorney General Maura Healey – met at the NYAGO office to discuss, among other things, the Exxon climate fraud matter. PLG was invited to attend this meeting by one or more potential clients, accepted that invitation and confidentially presented its legal opinions about potential litigation options to this group of potential clients. Pawa Decl. (2d) ¶ 8. The meeting and PLG's presentation were confidential; as Exxon knows, the Climate Change Coalition Common Interest Agreement ("CCCIA") confirmed that there was "an oral common interest agreement into which the Parties entered at the meeting" providing that "[t]he exchange of Shared Information among Parties – including among Parties' staff and *outside advisors* – does not diminish in any way the privileged and confidential nature of such information." *See* Pawa Decl. (2d) ¶ 8 & Exh. N ¶¶ 2, 4 (emphasis added).[2]

The day of the meeting, the Mass AG announced that her office, like the NYAGO before her, would "investigate the practices of ExxonMobil" due to the "troubling disconnect" between Exxon's internal and external statements. Exxon Exh. B at 12. The Mass AG must have decided to

_____

2015); McKenzie Funk, Did Exxon Lie About Global Warming?, *Rolling Stone* (June 30, 2016), http://www.rollingstone.com/politics/news/did-exxon-lie-about-global-warming-20160630 (Exxon "facing unprecedented pressure": "As never before, Exxon's investors are worried about how global efforts to curtail rising temperatures will hurt the company's profits.").

[2] Although Exxon submitted an email from the Vermont AGO dated March 28, 2016 questioning whether to enter into a common interest agreement, Vermont signed the CCCIA the very next day.

investigate Exxon beforehand, because this announcement appears in her prepared remarks, http://www.mass.gov/ago/docs/energy-utilities/ag-climate-change-remarks-032916.pdf. PLG had no advance notice that the Mass AG would be making this announcement. Pawa Decl. (2d) ¶ 8. No PLG employee participated in the press conference or had any input into any statement made there. *Id.*

On April 19, 2016, Massachusetts issued a CID to Exxon under M.G.L. Chapter 93A. PLG did not assist in drafting the CID, never saw it in draft form and first saw it when it was publicly released. Pawa Decl. (1st) ¶ 14.

## II. Exxon Files an "Unprecedented" Collateral Attack in Texas Federal Court.

Rather than complying with the Mass AG's CID (as it was complying with the NYAGO's investigation), Exxon went forum shopping and sued the Mass AG in a Texas federal court, which Exxon admits is an "unprecedented" step. PLG Exh. Q (PI Tr. 94:9).[3] Exxon alleges, *inter alia*, that the CID violates its First and Fourth Amendment rights, and has asked the Texas court to enjoin the Mass AG, because, allegedly, the Mass AG is impermissibly and politically motivated. PLG Exh. F at 1. Exxon's primary "proof" of what it claims is impermissible bias is largely statements the Mass AG made at the March 29 press conference. *Id.* at 12-13, 15-16.

The Mass AG moved to dismiss based on *Younger* abstention, ripeness, lack of personal jurisdiction and improper venue. Doc. #42 in No. 4:16-cv-0049-K (MTD). The Texas court (Kinkeade, J.) did not rule on that motion to dismiss; instead, on October 13, it *sua sponte* ordered narrow discovery on the question of *Younger* abstention. PLG Exh. A (Discovery Order) at 5-6. The only issue contemplated in that discovery order is whether the Mass AG acted in "bad faith in issuing the CID." *Id.* Exxon responded by serving the Mass AG with over 100 written discovery requests, noticing the depositions of AG Healey and her attorneys, and issuing eleven broad-ranging

---

[3] "PLG Exh." refers to the cited exhibit attached to the First or Second Pawa Declarations.

third-party subpoenas, including the ones at issue here.[4]  PLG Exh I., at 11.

On November 10, Exxon moved to amend the complaint to add similar claims against the NYAGO, despite the fact that Exxon has complied with and recognized the propriety of the New York subpoena, producing over one million pages of documents to the NYAGO.  *See infra* & Doc. #136 in No. 4:16-cv-00469-K, at 6.  Exxon served the New York AG with similar document and subpoena requests.  *Id.* at 9.

Before the AGs lodged formal objections to the discovery requests, Exxon requested a telephonic conference on November 16, 2016.  Parikh Decl. Exh. J.  At that conference, the AGs made brief oral objections to discovery and stated that neither AG would appear for the depositions Exxon had noticed.  In response, the Texas court stated that it would be busy with complex trials that will last "the rest of my adult days," and then suggested that the parties consent to appoint a special master.  *Id.* at 17:2, 17:14-15.  By letter sent later that day, the AGs consented to a magistrate but not to paying the Texas court's special master, due to the cost.  PLG Exh. I, at 11.  The next day, the Texas court ordered the AGs to respond to Exxon's 100+ written discovery requests within ten days of receiving them (even though that date already had passed), ordered the Mass AG to appear personally for a depositions in Dallas on December 13, and advised the New York AG to be available in Dallas the same day.  PLG Exh. C, at 1; PLG Exh. I, at 10-11.[5]

On December 9, 2016, the Mass AG filed a mandamus petition contending "it was extraordinary error to authorize discovery of the Attorney General's decision to issue a CID,"

---

[4] Several of Exxon's subpoenas are duplicative, *i.e.*, seek information from organizations and their employees.  Four subpoena recipients (the Rockefeller Family Fund, the Rockefeller Brothers Fund ("RBF"), RBF employee Michael Northrop, and 350.org) have moved to quash in the Southern District of New York.  *Exxon Mobil Corp. v. Healey*, No. 1:16-mc-00458-P1 (S.D.N.Y.); *Rockefeller Bros. Fund v. Exxon Mobil Corp.*, No. 1:16-mc-00455-P1 (S.D.N.Y.).  Two subpoena recipients are also located in the Boston area (the Union of Concerned Scientists and UCS employee Dr.  Peter Frumhoff).

[5] The Texas court denied motions by both AGs to reconsider this ruling in two other minute orders, without analysis.  *See* Doc. # 131 and # 152 in No. 4:16-cv-00469-K.

because the district court lacks personal and subject matter jurisdiction.  *See* PLG Exh. I, at 2.  On December 12, the Texas court cancelled, without explanation, AG Healey's deposition that it had ordered scheduled for December 13th.  PLG Exh. U.  The district court also ordered additional briefing on personal jurisdiction, due January 4, 2017.  PLG Exh. V.  On December 14, the Fifth Circuit denied the mandamus petition as moot.

## III.  Proceedings in Massachusetts and New York State Courts.

The day after filing its Texas federal lawsuit, Exxon petitioned the Suffolk Superior Court to set aside the CID, presenting the same constitutional arguments that it raised in Texas.  *Exxon Mobil Corp. v. Office of Attorney General*, No. 1684CV01888 (Mass. Super. Ct., Suffolk Cty.).[6]  Although Exxon characterized this petition as an "emergency," it moved for a stay so that the Texas federal court could rule first.[7]  The Mass AG cross-moved in Superior Court to enforce the CID.[8]  On December 7, 2016, the Superior Court (Brieger, J.) heard oral argument on these motions.  Justice Brieger's ruling on the AG's motion would constitute a final decision on the merits.  At the hearing, the Mass AG emphasized that there is no nexus between any action by the Mass AG and the alleged conspiracy of other persons alleged by Exxon going back to 2012.  *See* PLG Exh. W.

In New York, Exxon's document production is being supervised by a state trial court.  *See* PLG Exhs. R, at 24:13-25:19, S, T.  Exxon continues to produce documents to NYAGO, is not disputing AG Schneiderman's good faith before the New York court, and in fact has stated that New York has "the right to conduct the investigation."  PLG Exh. P, at 63:18-64:6; 33:23-25.

The Massachusetts and New York AGOs have refused to produce communications between

---

[6] The Superior Court is the mandatory jurisdiction to challenge the CID.  Mass. G.L. ch. 93A, § § 6(7), 7.

[7] *See* Exxon Br. in Support of Emergency Motion at 19, available at http://www.mass.gov/ago/docs/energy-utilities/exxon/05-memo-iso-emergency-motion.pdf.

[8] The major pleadings in the Massachusetts state court case (and the Texas federal case) are available at http://www.mass.gov/ago/bureaus/eeb/the-environmental-protection-division/exxon-investigation.html.

their offices and PLG on the bases of the attorney-client, work product and law enforcement investigatory privileges. *See* PLG Decl. (2d) ¶ 3(a) & Exh. I, at 26-28. Similarly, the NYAGO recently rejected a series of requests under its Freedom of Information Law ("FOIL") that seek communications with PLG. The bases for rejecting these requests include the work product doctrine, and the attorney-client and law enforcement privileges. *See* Pawa Decl. (2d) ¶ 3(b).[9]

## ARGUMENT

### I.    Exxon's Motion to Compel Should Be Denied.

#### A.    Exxon's Subpoenas Seek Irrelevant and Duplicative Information to Harass PLG.

The large majority of Exxon's document requests are entirely irrelevant to the only question that could be at issue: whether the Mass AG acted in bad faith in issuing the CID. Notably, discovery relating to *Younger* abstention, where "the potential for abuse and harassment is quite high," must be "limited"; indeed, "extensive discovery from numerous individuals" is inappropriate. *Sica v. Connecticut*, 331 F. Supp. 2d 82, 87-88 (D. Conn. 2004). But here, Exxon's requests are largely irrelevant and duplicative, a telltale sign that Exxon is simply harassing its adversary.

Exxon fails to meet the standard for discovery from a non-party. "[T]he scope of discovery differs significantly between parties and nonparties. . . . To obtain discovery from nonparties, a party must establish that its need for discovery outweighs the nonparty's interest in nondisclosure." *Bio-Vita, Ltd. v. Biopure Corp.*, 138 F.R.D. 13, 17 (D. Mass. 1991); *see also In re Sealed Case (Medical Records)*, 381 F.3d 1205, 1215-16 (D.C. Cir. 2004). Because Pawa and PLG are currently adversaries

---

[9] Exxon's description of a New York state court FOIL ruling, *see* MTC at 11 n.9, is misleading at best. The FOIL request in *Competitive Enterprise Institute v. Attorney Gen. of N.Y.*, 2016 WL 6989406 (N.Y. Sup. Ct. Nov. 21, 2016), *requested* documents from the NYAGO relating to PLG that *do not exist* (*i.e.*, common interest agreements with Pawa or PLG) as well as all other common interest agreements with certain other individuals, groups or with other AG offices. The NYAGO has now produced what it states is the only responsive document in its possession (*i.e.*, a common interest agreement with other AGs), *see* PLG Exh. N. The state court merely ordered NYAGO to explain the search it undertook, *see id.* at *1-2; the court's order does not so much as mention Pawa or PLG. *See also* PLG Exhs. J- M (NYAGO invoking privileges re communications with PLG).

to Exxon, they begin with a strong interest in nondisclosure of their Exxon documents.

As to Pawa personally, Exxon's motion should be denied as Pawa has no documents that PLG does not. *See* Pawa Decl. (1st) ¶ 16 & (2d) ¶ 13. The Pawa subpoena is entirely duplicative to PLG's and should be quashed on this ground alone. FRCP 26(b)(2)(C)(i).

If Exxon fails to meet its "burden of showing [the] relevance" of its requests, its motion should be denied. *Caouette v. OfficeMax, Inc.*, 352 F. Supp. 2d 134, 136 (D.N.H. 2005). Exxon has not met this burden; its claim that it seeks only documents "substantiating the [alleged] bad faith conspiracy" among the AGs, *id.* at 2-3, is false. Five requests (Nos. 7, 8, 11, 13, 14) concern events where Exxon does not even suggest any AG office was present, including one event that pre-dates AG Healey's election in Massachusetts. Since, as Exxon states, "the lawfulness of [PLG's] conduct is not at issue here," MTC at 2, documents PLG or its attorneys may have shared or discussed *privately* – with other lawyers and organizations – but *not* with the Mass AGO, is irrelevant to the Mass AG's good or bad faith. Exxon also requests documents about "fundraising for candidates for public office" (Request No. 10), and shareholder resolutions relating to climate change (Request No. 9), without explaining how either request has anything to do with alleged bad faith by the Mass AG. Exxon even asks for information about Al Gore's speaking fees. (Request No. 3). Exxon fails to mention, let alone justify, these eight utterly irrelevant requests.

The only even arguably relevant substantive requests are Nos. 4, 5 and 6, concerning communications and meetings with the AGs offices and their common-interest agreement.[10] Even these are overbroad, however: only the Mass AG's good faith is at issue within the limited *Younger* discovery granted; Exxon fails to explain the relevance of information regarding other AGs offices. Any direct communications with the Mass AG's office, of course, are privileged, as set forth below.

---

[10] Request Nos. 1, 2 and 12 seek information about the March 29 press conference and about a January 8 meeting. These requests are duplicative of Request Nos. 4, 5 and 6, which already seek information about all meetings with attorneys general.

Request No. 5, moreover, would require production of PLG's discussions with states regarding any investigation of Exxon on any topic, which would include what is likely to be a very large number of emails relating to PLG's past, current and potential MTBE cases for states, which are utterly irrelevant to the Texas lawsuit. *See* Pawa Decl. (2d) ¶¶ 5, 9.

Exxon argues that the March 29 presentation is not available from the Mass AG. MTC at 19 n.14. But as noted above, the Mass AG decided to investigate Exxon prior to March 29, making this presentation irrelevant. Nevertheless, the intrusion on PLG's interests of disclosing a confidential litigation presentation to a potential adversary in that litigation would be extreme.

Exxon has not demonstrated that it has made any relevant requests that would justify the exceptional burdens on PLG.

## B. Enforcing Exxon's Subpoenas Would Violate the First Amendment.

PLG has satisfied its *prima facie* case and Exxon has failed to carry its high burden.

### 1. *Exxon's inquiry into strategies of a perceived political opponent infringes First Amendment rights.*

Exxon incorrectly suggests PLG must show that production "will result" in "threats or harassment," MTC at 12. This argument was directly rejected in *AFL-CIO v. Federal Election Comm'n*, 333 F.3d 168, 176-77 (D.C. Cir 2003), where the court held that it was not necessary to establish "violence, economic reprisals, and police or private harassment," and struck down a federal disclosure regulation that would have frustrated the organizations' political goals "by revealing to their opponents [the groups'] 'activities, strategies and tactics'" used in the past and likely to be used in the future. PLG need only make a *prima facie* showing "of arguable First Amendment infringement," *In re Motor Fuel Temperature Sales Practices Litig.*, 641 F.3d 470, 488-90 (10th Cir. 2011).[11] It is enough that disclosure "could" chill First Amendment activities. *Perry v. Schwarzenegger*, 591 F.3d 1147, 1164 (9th Cir. 2010). Courts "must . . . give deference to an association's view of

---

[11] Exxon relies heavily on *Motor Fuel* to argue that PLG has not met its *prima facie* burden, but in that case the only evidence was a single "ambiguous," "equivocal," and "unsworn" statement. *Id.* at 491.

what would impair its expression." *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 653 (2000).

First Amendment injury need not be established with specificity; even evidence "lacking in particularity" is sufficient where it is "consistent with the self-evident conclusion that important First Amendment interests are implicated" by the discovery request. *Perry*, 591 F.3d at 1163. The evidence need only create "a reasonable inference" that disclosure would "discourag[e]" political association. *Id.* The declarations here amply satisfy that standard. Pawa Decl. (1st) ¶ 20; Pawa Decl. (2d) ¶¶ 10-12; Gleason Decl. ¶¶ 4-7.

The First Amendment protects the freedom to associate and express views as a group, *NAACP v. State of Alabama ex rel. Patterson*, 357 U.S. 449, 460-62 (1958), and petitioning activity is "evaluated under the same First Amendment principles." *Shirokov v. Dunlap, Grubb & Weaver PLLC*, 2012 U.S. Dist. LEXIS 42787, at *54-55 (D. Mass. Mar. 1, 2012). Exxon's subpoenas to PLG and Pawa rest on the notion that they are part of a group including lawyers, scientists, and non-profit groups that are campaigning against Exxon, and soliciting action by state officials, for "political" purposes, MTC 5; the subpoenas specifically, and improperly, target PLG's petitions to government, *see* Request Nos. 1, 2, 4, 5, 6, 12, 14; *Pebble L.P. v. EPA*, 310 F.R.D. 575, 582 (D. Alaska 2015); *Wyoming v. U.S. Dep't of Agriculture*, 208 F.R.D. 449, 451, 454 (D.D.C. 2002). Moreover, Exxon admits that there is nothing improper about such conduct. Exxon effectively concedes, then, that the associational, speech, and petitioning activity of such a campaign are core First Amendment activity, and "[c]ompelled disclosures concerning protected First Amendment political associations have a profound chilling effect." *Perry*, 591 F.3d at 1156. Compelled disclosure chills participation in current and future advocacy campaigns. *See id.* at 1162; *Chevron Corp. v. Donziger*, 2013 U.S. Dist. LEXIS 49753, at *7-8 (N.D. Cal. Apr. 5, 2013) (quashing subpoena by oil company served on environmental group due to chilling effect on First Amendment rights). PLG has shown that other citizens concerned about climate change would avoid associating with PLG attorneys if their

communications were not confidential.  PLG Decl. (2d) ¶¶ 10-12; Gleason Decl. ¶¶ 4-7.  Disclosure could also "have a deterrent effect on the free flow of information" among citizens and organizations concerned about climate change.  *Perry*, 591 F.3d at 1163.  The right to associate with others to advance shared beliefs includes "the right to exchange ideas and formulate strategy and messages, and to do so in private[,]" and "[c]ompelling disclosure of internal campaign communications can chill the exercise of these rights."  *Id.*  As PLG has shown, compelling disclosure here would chill communications between PLG and other citizens concerned about climate change and will result in PLG not attending Exxon-related meetings with like-minded organizations and citizens concerned about the environment.  Pawa Decl. (1st) ¶ 20(c); Pawa Decl. (2d) ¶¶ 10-12.  This is more than enough under *Perry*.  *See* 591 F.3d at 1163; *see also Wyoming v. U.S. Dep't of Agriculture*, 208 F.R.D. 449, 454 (D.D.C. 2002) (threat to First Amendment rights is "severe" when party seeks disclosure of opponents' confidences).  Given the tenuous relevance of Exxon's requests, its obvious goal is to gain tactical advantage by learning its opponents' strategies.

Exxon misleadingly suggests that its subpoenas do not implicate the harms that PLG has identified – that they do not seek PLG's work emails, or "Exxon-related meetings" that are "not embraced by the requests."  Exxon Brief ("MTC") at 13.  But any number of Exxon meetings are "embraced by the requests"; the requests seek information of citizens meeting in private to discuss Exxon's climate deceptions often without any connection to the Mass AG's decision to issue the CID.  *See* Pawa Decl. (1st) ¶ 17(e) & (g).  And it is self-evident that if Exxon succeeds in subpoenaing documents about *past* meetings that discussed the company, that will deter participation in *future* similar meetings, *id.* ¶ 20 & Pawa Decl. (2d) ¶¶ 10-12, especially since Exxon's subpoenas seek to impose a continuous obligation.  PLG Exh. D ¶ 33.  It is similarly self-evident that if PLG's communications with AGs cannot be kept confidential, that would plainly chill PLG's and others' ability to petition the government in the future.

2. *Exxon cannot meet its high burden to demonstrate a need that justifies the chilling of PLG's rights.*

Since PLG has made a *prima facie* showing, Exxon must demonstrate an interest in forcing disclosure sufficient to justify the injury to PLG's constitutional rights. *Perry,* 591 F.3d at 1161. Exxon must prove: 1) that the information sought is "highly relevant"; 2) that the request is "carefully tailored to avoid unnecessary interference with protected activities" *and* 3) that the information is otherwise unavailable. *Id.* Exxon fails all three elements.

Exxon does not explain the relevance of any of its specific requests – let alone that they are "highly relevant." Instead, Exxon argues that a limited subset of its subpoena requests – PLG's "communications with the attorneys general," MTC at 14 – is relevant because the Mass AG was following a "strategy" developed at "Pawa's 2012 conference," and that strategy was intended "*not* to discover criminal wrongdoing," but to "vilify and delegitimize ExxonMobil." MTC at 14. But Exxon cites only its own complaint for these points, no doubt because the objective facts conflict with every part of this claim. First, no PLG attorney convened, funded, or authored the report for, the 2012 workshop, *see* Pawa Decl. (2d) ¶ 13; the workshop summary does not call for a strategy to vilify Exxon, *see* Exxon Exh. D at 2;[12] and the summary says that the participants discussed the deception by fossil fuel companies as a possible "'criminal enterprise,'" *id.* at 13, discussed "demonstrably false information," *id.*, and the likelihood that "incriminating documents may exist that demonstrate collusion among the major fossil fuel companies," *id.* at 9. It is pure speculation that the Mass AG in 2016 was inspired by this 2012 meeting.[13]

Exxon has not met its burden of demonstrating a sufficiently compelling need to overcome

---

[12] The only references to Exxon in the report relate to a pending case against Exxon and to Exxon's past emissions. *Id.* at 12, 19.

[13] Exxon's only other basis for the relevance of PLG's materials is the fact that a NY AG staffer advised Pawa not to confirm his attendance at the March 29 meeting; but the AGs expectation of confidentially is routine and unremarkable.

the constitutional rights of Pawa and his colleagues.

## C. Any Arguably Relevant Documents Are Privileged.

The Court must quash a subpoena that "requires disclosure of privileged or other protected matter." FRCP 45(d)(3)(A). Exxon's subpoenas seek privileged information; Exxon argues only that the privileges do not attach because there was no attorney-client relationship, and that the March 29 presentation carried no expectation of confidentiality. Neither contention is correct.

### 1. *PLG's communications with the AGs, as prospective clients, are privileged.*

Exxon does not dispute that the attorney-client privilege applies to prospective clients, *see Lonegan v. Hasty*, 436 F. Supp. 2d 419, 434 n.8 (E.D.N.Y. 2006), but denies that any AG was PLG's prospective client. MTC at 16. But the Mass AGO (and the NYAGO) have invoked attorney-client privilege with respect to communications with PLG, *see* PLG Exh. I, at 26-28 (Mass. AGO mandamus petition); PLG Exhs. J-M (FOIL).[14]

### 2. *The documents requested are attorney work product.*

Substantially all of the documents requested, which relate to PLG's climate change litigation strategies, are protected work product. Under *Hickman v. Taylor*, 329 U.S. 495 (1947), an attorney's strategic thinking about litigation is nearly inviolate: "Not even the most liberal of discovery theories can justify unwarranted inquiries into the files and the mental impressions of an attorney." *Id.* at 510. This "opinion" work-product enjoys essentially "ironclad" protection from discovery. *In re San Juan Dupont Plaza Hotel Fire Litig.*, 859 F.2d 1007, 1014-15 (1st Cir. 1988).

Exxon claims that work product protection cannot apply unless PLG was retained by a client. But, as noted above, PLG's communications with the AGs – including the March 29

---

[14] The case that Exxon cites, *In re Grand Jury Subpoena*, 1986 U.S. Dist. LEXIS 17185 (D. Mass. Nov. 26, 1986), is inapposite because in that case "the attorney [did] not claim all the material sought is privileged" and the court expressly found that he could "refuse to answer questions he believes to be protected by the attorney-client privilege." *Id.* at *4-5 (citations and internal quotation marks omitted).

presentation, which Exxon admits was about "climate change litigation," MTC at 5 – were with prospective clients. *See* Pawa Decl. (2d) ¶¶ 4-8. Exxon relies on the text of Rule 26(b)(3) to argue that confidential work product for prospective clients is not protected,[15] but that rule only "*partially codifies the work product doctrine as recognized in Hickman.*" *In re San Juan*, 859 F.2d at 1013. And critically, it governs *party* discovery, where there is, by definition, a client. Further, the common-law doctrine protects litigation materials prepared by an attorney "before he [is] formally retained" – *i.e.,* before having a client. *See SEC v. Chesnoff*, 2006 U.S. Dist. LEXIS 49090, at *12 (N.D. Tex. July 18, 2006); *Newmarkets Partners, LLC v. Sal. Oppenheim Jr. & Cie. S.C.A.*, 258 F.R.D. 95, 102 (S.D.N.Y. 2009). This includes situations where an attorney directs the preparation of materials relating to a group of potential clients, without necessarily knowing which (if any) client he or she will ultimately represent. *See Cohen v. City of New York*, 255 F.R.D. 110, 123-25 (S.D.N.Y. 2008).

PLG's materials on climate litigation – including the March 29 presentation – were prepared in anticipation of prospective climate litigation. *See* Pawa Decl. (1st) ¶ 15; Pawa Decl. (2d) ¶¶ 4-8. This is a common sense claim given that, as Exxon points out, PLG has brought such litigation in the past. Allowing Exxon access to these documents cuts at the heart of the work product rule.

3. *The communications carried an expectation of confidentiality.*

With respect to the March 29 presentation only, Exxon argues that neither privilege applies because there was no expectation of confidentiality.[16] This is simply wrong. PLG was invited to present at the meeting by one or more prospective clients, who – by the time of the meeting – had

---

[15] Exxon cites *Colonial Gas Co. v. Aetna Casualty & Sur. Co.*, 144 F.R.D. 600 (D. Mass 1992), but that case does not address whether an attorney must have a client for the work-product doctrine to apply; it holds that work-product protection extends to materials made in anticipation of completely separate litigation.

[16] Exxon does not dispute that any bilateral communications between PLG and the Mass AGO or NYAGO were carried out with an expectation of confidentiality. Likewise, Exxon does not dispute that both these communications, as well as internal PLG documents and private communications with other lawyers and advocates, have never been shared by PLG "in a way inconsistent with keeping it from an adversary," and thus remain protected work product. *United States v. Mass. Inst. of Tech.*, 129 F.3d 681, 687 (1st Cir. 1997).

entered into an oral common interest and confidentiality agreement with the other AGs. PLG Exh. N. Although the other AGs were also prospective clients, even if they were not, sharing information to parties with common interests does not vitiate work product protection. *Medinol v. Bos. Sci. Corp.*, 214 F.R.D. 113, 115 (S.D.N.Y. 2002).

Exxon contradictorily argues that the AGs took steps to conceal PLG's participation in the meeting and that they had no expectation that the presentation was confidential. MTC at 5, 15-16. That makes no sense and it is based on a mischaracterization of a warning by the Vermont AG's office that materials might "get produced because of some state's public record laws." Exxon Ex. I at 1. The fact is, the AGs entered into an oral common interest agreement at the March 29 meeting covering the presentation. PLG Exh. N ¶ 2.[17] In short, they agreed to confidentiality for this litigation presentation and it has been treated as such; it thus remains protected opinion work product.[18]

### 4. *PLG's communications are also protected by investigatory privileges.*

Exxon does not dispute that the information PLG has shared with the AGs is covered by the law enforcement, state investigatory and informer's privileges. Nor has it argued that the privilege yields to their interests. It argues only that PLG cannot assert these privileges. MTC 15-16. This argument is unavailing because the AGs *have* asserted these investigatory privileges, regarding the same documents Exxon seeks here. PLG Exh. I, at 26-28, PLG Exhs. J-M. Thus, the issue presented here is not whether private individuals can ordinarily invoke investigatory privileges, but whether Exxon can use a Rule 45 subpoena to circumvent the AGs' invocation of that privilege

---

[17] Indeed, the written agreement specifically requires the AG offices to "refus[e] to disclose covered documents" under public records laws. PLG Exh. N, ¶ 6. The NYAGO in fact has resisted attempts at disclosure in subsequent FOIL requests. PLG Exh. I, at 26-28 & PLG Exhs. J-M.

[18] Exxon's authority is not to the contrary. *See In re: Atl. Fin. Mgmt. Sec. Litig.*, 121 F.R.D. 141, 145 (D. Mass. 1988) (work product protection waived when disclosed to an *adversary* and where there was "no evidence . . . of a written, or even oral, assurance of confidentiality").

in the underlying and other related litigation. None of Exxon's authority suggests that it can.[19]

   5. *The subpoenas seek confidential information and unretained expert opinion.*

Even if there were some technical barrier to the application of a privilege, Rule 45 allows a subpoena to be quashed where it calls for "confidential research . . . or commercial information," or "an unretained expert's opinion." FRCP 45(d)(3)(B)(i)-(ii). There is no question that the documents requested – including the March 29 presentation – are "confidential research" by PLG. Pawa Decl. (2d) ¶¶ 4-8. Furthermore, it is indisputable that Pawa was invited to present due to his expertise in climate litigation, and thus handing over his strategic thoughts to Exxon would be stealing his intellectual property. The expert opinions of lawyers qualify for protection under this rule. *See Aragon v. San Jose Ditch Ass'n*, 2011 U.S. Dist. LEXIS 127243, at *22-23 (D.N.M. Oct. 3, 2011). Given the minimal relevance of these materials, these interests should prevail.

## D. The Court Should Sanction Exxon.

Because Exxon's subpoena seeks irrelevant and privileged information, and therefore would impose undue burden or expense on PLG, this Court "must" sanction Exxon. FRCP 45(d)(1); *see also Rockstar Consortium US LP & Netstar Techs. LLC v. Google Inc.*, 2015 U.S. Dist. LEXIS 139770, *16 (D. Mass. Oct. 14, 2015) (sanctioning subpoena issuer who "sought largely irrelevant information"). This is especially so where, as here, the subpoena target has incurred substantial fees in hiring outside counsel to contest the subpoena. *Id.* at *21; Pawa Decl. (1st) ¶ 21. A fee award is further justified because Exxon's "broad, burdensome subpoenas" seek "all" documents about myriad topics. *Google*, 2015 U.S. Dist. LEXIS 139770, at *20-21; *see also Sykes v. Bayer Corp.*, 2008 U.S. Dist. LEXIS 118999, at *4-5 (D.N.H. June 23, 2008) (imposing sanctions where overbroad subpoena sought to chill the target's "First Amendment right to speak out on the issue."). Exxon

[19] *See Sterling Merch., Inc. v. Nestle, S.A.*, 470 F. Supp. 2d 77, 83-84 (D.P.R. 2006) (government recipient of subpoena did not invoke privilege); *Ass'n for Women in Sci. v. Califano*, 566 F.2d 339, 343 (D.C. Cir. 1977) (no discussion whether privilege can be invoked by private person); *United States v. Lilly*, 185 F.R.D. 113, 115 (D. Mass. 1999) (same).

must be sanctioned for its abusive conduct.[20]

## II. Exxon's transfer motion should be denied.

From the beginning, Exxon has had a simple strategy: avoid Massachusetts. Faced with an investigative demand issued under Massachusetts law by the Massachusetts AG, Exxon has sued the Massachusetts AG. But it did so in a hand-picked federal court in Texas, scorning the Massachusetts statutes that *require* Exxon to challenge the CID in Massachusetts Superior Court. *See* Mass. G.L. ch. 93A, §§ 6(7), 7. And now, Exxon seeks to have its discovery motion against a Massachusetts resident, seeking documents in Massachusetts, to be heard in Texas. Because PLG does not consent, transfer requires Exxon to prove that "exceptional circumstances" outweigh the burden of transfer on PLG. Fed. R. Civ. P. 45(f). Exxon has not carried its burden.

### A. Transfer Standard.

This Court can transfer only if it finds "exceptional circumstances" *and* that those circumstances outweigh PLG's interests in local resolution. Fed. R. Civ. P. 45(f) 2013 Adv. Comm. Note. Exxon "bears the burden of showing that [extraordinary] circumstances are present," the burden on PLG is the "prime concern," and "it should not be assumed that the issuing court is in a superior position to resolve subpoena-related motions." *Id.* The rule was designed to ensure that transfer is a "rare event." 9A Wright & Miller 3d § 2451.

### B. Transfer would impose an impermissible burden on PLG.

Exxon ignores the burden of transfer on the subpoenaed party, even though this factor is "'the prime concern'" in evaluating any transfer motion. *Isola USA v. Taiwan Union Tech. Corp.*, 2015 U.S. Dist. LEXIS 140416, at *10 (D. Mass. June 18, 2015) (quoting Advisory Committee Note). Since the rule assumes that "local nonparties should be burdened as little as practicable by litigation

---

[20] Exxon's cited cases, *see* MTC at 20 n.16, do not support its position. *See Mount Hope Church v. Bash Back*, 705 F.3d 418, 429 (9th Cir. 2012) (Rule 45 sanctions appropriate "where a party subpoenas clearly protected information in bad faith"); *Energy Power (Shenzhen) Co. v. Wang*, 2014 U.S. Dist. LEXIS 67708, at *12 (D. Mass. May 16, 2014) (quashing subpoenas; no request for sanctions).

in which they are not involved, and [that] local resolution of the motion will typically impose a lighter burden," Exxon's failure to attempt to overcome this assumption is fatal to its motion. *Woods v. SouthernCare, Inc.*, 303 F.R.D. 405, 407 (N.D. Ala. 2014). Here, the burden of litigating in Texas is high in light of PLG's "size, resources and [lack of] presence" in Texas. *Isola*, 2015 U.S. Dist. LEXIS 140416, at *10.

PLG has no presence in Texas. And PLG is about as small as a law firm can be, with only three lawyers (one of them part-time) and only one administrative employee. Pawa Decl. (2d) ¶ 16; Pawa Decl. (1st) ¶ 22. PLG's only office is more than 1,700 miles from Dallas. Pawa Decl. (2d) ¶ 17; *see Elliot v. Mission Tr. Servs., LLC*, 2015 U.S. Dist. LEXIS 45412, at *8-9 (N.D. Ill. Apr. 7, 2015) (transfer was a "mockery of the rules" where subpoena recipient had to travel 1,000 miles). PLG has retained outside attorneys in this matter but none is a Texas practitioner, so PLG likely would have to hire another law firm to appear in Texas. *See Platinum Props. Inv'r Network v. AMCO Ins. Co.*, 2015 U.S. Dist. LEXIS 137624, at *12-17 (D. Kan. Oct. 8, 2015) (burden of hiring local counsel and traveling to hearings in California would be significant, rejecting motion to transfer). While Exxon suggests that hearings can take place telephonically, the possibility of telephonic appearance is "inadequate" to justify transfer. *Personalized Media Communications v. Top Victory Elecs.*, 2016 U.S. Dist. LEXIS 101995, at *3-*5 (N.D. Cal. Aug. 3, 2016). Moreover, the Texas court has already ordered other nonresident litigants – the Massachusetts and New York attorneys general – to appear personally in his courtroom for depositions, Pawa Decl. (1st) Exh. C, which suggests that burdens could ultimately be very high.

The burden on PLG is the "prime concern" – and here this burden is high. Yet Exxon has said nothing about it. On this ground alone, transfer should be rejected.

### C. Exxon has not shown exceptional circumstances are present here.

#### 1. There is no conflict from "repercussions" on the Texas proceedings.

Exxon errs in arguing that the case should be transferred because any decision on PLG's subpoena could have "important repercussions" on the Texas case, which that court is in the "best position" to evaluate. MTC at 9. The issuing court is always more familiar with the underlying case; familiarity alone does not constitute an "exceptional circumstance," as decisions from this Court, the Texas court and other courts hold.[21] Exxon also argues that the Texas court is "uniquely situated to resolve" issues of privilege, MTC at 1, but privilege issues are routinely decided by the compliance court.[22]

Exxon does not identify a prior ruling by the Texas court that would conflict with a decision by this Court. Both the Advisory Committee Note and the cases are clear that, when it comes to action by the issuing court, the only "exceptional circumstance" is an actual, prior decision by the Texas court that would conflict with this Court's decision; the mere potential for future conflicts is not enough.[23] The two cases Exxon cites (MTC at 10) both involved conflicts with prior orders.[24]

---

[21] *See Isola*, 2015 U.S. Dist. LEXIS 140416, at *10 ("no question" that issuing court was more familiar with "procedural and substantive aspects" of underlying patent case, but this was not an exceptional circumstance: "Isola's argument would eviscerate the protection Rule 45 provides to local nonparties"); *CMB Expert, LLC v. Atteberry*, 2014 U.S. Dist. LEXIS 72029, at *4-5 (N.D. Tex. May 27, 2014) (similar). *See also Lima LS PLC v. Nassau Reinsurance Grp.*, 160 F. Supp. 3d 574, 580 (S.D.N.Y. 2016) (similar); *Woods*, 303 F.R.D. at 409 ("Most nonparty subpoenas will raise issues that are related to the underlying litigation" and exceptional circumstances "do not exist simply because the issuing court is in a better position to decide the motion").

[22] *See Inter-Am. Dev. Bank v. Venti S.A.*, 2016 U.S. Dist. LEXIS 137762, at *20 (S.D. Fla. Oct. 4, 2016) (privilege is "independent legal issue[]," "courts applying Rule 45(f) have recognized that such questions are adequately dealt with by the compliance court"); *AMCO Ins. Co.*, 2015 U.S. Dist. LEXIS 137624, at *14-15 (similar); *Chevron Corp. v. Donziger*, 2013 U.S. Dist. LEXIS 49753, at *12 (N.D. Cal. Apr. 5, 2013) (quashing subpoena; factual distinctions on First Amendment issue distinguished respondent from other subpoena recipients in same case where courts had enforced); *see also* PLG Exh. X (denying transfer motion in same case).

[23] *See* 2013 Advisory Comm. Note (exceptional circumstances exists if issuing court "has *already ruled* on issues presented by the motion"); *Woods*, 303 F.R.D. at 408-09 ("The risk of overlapping future rulings ... does not constitute an exceptional circumstance.") *Inter-Am. Dev. Bank*, 2016 U.S. Dist. LEXIS 137762, at *7-9 (same); *Lima LS PLC*, 160 F. Supp. 3d at 580 (same); *Personalized Media Communs., LLC v. Top Victory Elecs. (Taiwan)*

A decision by this Court on PLG's quash motion would not create a conflict.

### 2. Transfer is not necessary to avoid conflicts with decisions by other courts.

Exxon argues that the subpoenas pending in four other districts (including the two quash motions filed in the S.D.N.Y.) could result in "inconsistent" rulings, and thereby create "unnecessary delay and require further action" by the Texas court. MTC at 8.

Not so. First, subpoena litigation in just one other district – or even in four, if it ever comes to that – is in no way "exceptional" or a "rare event." Large cases often involve witnesses in more than one jurisdiction. Exxon should not be permitted to subpoena its many critics and then use the very breadth of its own efforts as a bootstrap to justify transfer to its chosen forum. In a similar situation involving a series of decisions on numerous subpoenas issued by Chevron, at least six of them were litigated in three courts outside the issuing court; the only transfer motion it brought was denied.[25]

Second, there is no true risk of inconsistent rulings. Unlike every case Exxon relies on (MTC 8 n.7),[26] no court has issued a decision that might conflict with a decision by this Court. And in the future, subpoena proceedings here and elsewhere are most likely to turn on the application of

*Co.*, 2016 U.S. Dist. LEXIS 101995, *4 (N.D. Cal. Aug. 3, 2016) (pending motion in issuing court on same issue did not justify transfer: "PMC has not cited to any previously court-determined discovery decision or issue with which this Court is at risk of conflicting").

[24] *See Valle del Sol, Inc. v. Kobach*, 2014 U.S. Dist. LEXIS 106336, at *9 (D. Kan. Aug. 4, 2014) (issues presented by motion were "intertwined" with issues "already decided by Judge Bolton"); *Costco Wholesale Corp. v. Crane*, 2016 U.S. Dist. LEXIS 132778, at *6 (N.D. Cal. Sept. 27, 2016) (similar).

[25] *Chevron Corp.*, 2013 U.S. Dist. LEXIS 49753, at *12 (quashing subpoena); PLG Exh. X (transfer denial). Proceedings on four subpoenas were brought in the Northern District of California (3:11-mc-80217-CRB, 3:12-mc-80038-CRB, 3:12-mc-80237), on one subpoena in the District of Columbia (1:11-mc-00409-JMF), and on one in the Northern District of New York (1:12-mc-00065-lk-CFH). The underlying litigation was in the Southern District of New York.

[26] *See Kobach*, 2014 U.S. Dist. LEXIS 106336, at *10; *Agincourt Gaming, LLC v. Zynga, Inc.*, 2014 U.S. Dist. LEXIS 114348, at *17, *19 n.9 (D. Nev. Aug. 15, 2014); *Google, Inc. v. Digital Citizens Alliance*, 2015 U.S. Dist. LEXIS 103156, *4 (D.D.C. July 31, 2015). Notably, all three cases also rely heavily on the issuing court's greater familiarity with the underlying action – a position categorically rejected in *Isola* and many other cases, as noted above.

relatively settled law (such as the First Amendment balancing test and undue burden) to party-specific facts. This point is shown by Exxon's own motion to compel, which focuses on the alleged inadequacy of PLG's declarations, and on privilege issues not raised at all in the S.D.N.Y. proceedings (which challenge subpoenas of non-lawyers). And here again *Chevron* is on point. The California court accepted a First Amendment argument rejected by a New York court, but there was no "inconsistency": the California court carefully considered the New York decision and noted the factual differences that entitled one subpoena recipient to benefit from protection even though another subpoenaed party did not. *Chevron*, 2013 U.S. Dist. LEXIS 49753, at *12. As a judge from the Texas court has pointed out, the case for transfer is eliminated where the second court can "benefit" by applying decisions on a similar issue by the first court. *Orix USA Corp. v. Armentrout*, 2016 U.S. Dist. LEXIS 95104, at *9 (N.D. Tex. July 21, 2016). Just so here.

   3. *There is no conflict with the Texas Court's "expedited" discovery schedule.*

  The Texas court recently cancelled the deposition of the Mass AG, which had been scheduled for December 13. PLG Exh. U. Instead, the Texas court has requested further briefing on personal jurisdiction. PLG Exh. V. The schedule upon which Exxon relies no longer exists.

## CONCLUSION

  Exxon's cross-motion to compel and to transfer should be denied.

Dated: December 14, 2016

             Respectfully submitted,
             PAWA LAW GROUP, P.C.
             MATTHEW PAWA
             By their attorneys,

             /s/ Alan D. Rose
             Alan D. Rose BBO # 427280
             Michael L. Chinitz BBO# 552915
             ROSE, CHINITZ & ROSE
             One Beacon Street, 23rd Floor
             Boston, Massachusetts 02108
             Telephone: (617) 536-0040
             Fax: (617) 536-4400

adr@rose-law.net
mlc@rose-law.net

Catherine S. Duval BBO# 655004*
ZUCKERMAN SPAEDER LLP
1800 M Street NW, Suite 1000
Washington, DC 20036-5807
Telephone: (202) 778-1800
Fax: (202) 822-8106
cduval@zuckerman.com

* Admitted *pro hac vice*

Marco Simons*
EARTH RIGHTS INTERNATIONAL
1612 K Street NW, #401
Washington, DC 20006
Telephone: (202) 466-5188
Fax: (202) 466-5189
marco@earthrights.org

* *Pro hac vice* application pending

**CERTIFICATE OF SERVICE**

I, Michael L. Chinitz, hereby certify that on December 14, 2016 Pawa Law Group, P.C. and Matthew Pawa's Memorandum of Law in Opposition to Exxon Mobil Corporation's Cross Motion to Transfer and Compel was filed through the CM/ECF system and was served upon all counsel of record through the ECF system; and was served on the following non-registered participants by mail:


Patrick J. Conlon
Daniel E. Bolia
Exxon Mobil Corporation
1301 Fannin Street
Houston, TX 77002

/s/  Michael L. Chinitz
Michael L. Chinitz