```
 1                UNITED STATES DISTRICT COURT

 2                  DISTRICT OF MASSACHUSETTS

 3                            No. 1:16-cv-12504-WGY

 4


 5   EXXON MOBIL CORPORATION,
              Plaintiff
 6


 7   vs.


 8


 9   PAWA LAW GROUP, P.C., et al,
              Defendants
10

11
                         *********
12

13              For Hearing Before:
               Judge William G. Young
14

15           Motion to Quash Subpoena

16
                 United States District Court
17               District of Massachusetts (Boston)
                 One Courthouse Way
18               Boston, Massachusetts 02210
                 Friday, December 16, 2016
19

20                       *******

21

22       REPORTER: RICHARD H. ROMANOW, RPR
                Official Court Reporter
23            United States District Court
     One Courthouse Way, Room 5510, Boston, MA 02210
24              bulldog@richromanow.com

25
```

```
 1                A P P E A R A N C E S

 2

 3   JUSTIN ANDERSON, ESQ.
     JAMIE BROOKS, ESQ.
 4      Paul Weiss Rifkind Wharton & Garrison
        2001 K Street, NW
 5      Washington, DC 20006-1047
        (212) 373-3000
 6      Email: Janderson@paulweiss.com
    and
 7   THOMAS C. FRONGILLO, ESQ.
        Fish & Richardson, P.C. (Bos.)
 8      One Marina Park Drive
        Boston, MA 02210-1878
 9      (617) 521-7050
        Email: Frongillo@fr.com
10      For Plaintiff

11

12   ALAN D. ROSE, SR., ESQ.
     ANTONIO MORIELLO, ESQ.
13   MICHAEL L. CHINITZ, ESQ.
        Rose, Chinitz & Rose
14      One Beacon Street, 23rd Floor
        Boston, MA 02108
15      (617) 536-0040
        Email: Adr@rose-law.net
16      For Defendants

17

18

19

20

21

22

23

24

25
```

```
 1          P R O C E E D I N G S
 2          (Begins, 10:15 a.m.)
 3          THE CLERK:  Now hearing Civil Matter 16-12504,
 4   Exxon Mobile versus Pawa Law.
 5          THE COURT:  Good morning.  Would counsel introduce
 6   themselves.
 7          MR. CONLON:  Your Honor, may we bring one more
 8   chair to the front from the end?
 9          THE COURT:  I don't think you're going to be here
10   that long, but I want everyone to sit, so, um, yes, you
11   may.  But while we're bringing chairs, maybe you could
12   start introducing yourselves.
13          MR. FRONGILLO:  Thomas Frongillo, from Fish &
14   Richardson, for Exxon Mobil.
15          THE COURT:  Yes.
16          MR. ANDERSON:  Good morning, Judge, it's Justin
17   Anderson from Paul Weiss for Exxon Mobil.
18          MS. BROOKS:  Jamie Brooks from Paul Weiss for
19   Exxon Mobil.
20          MR. CONLON:  And, good morning, your Honor,
21   Patrick Conlon, I'm in-house counsel for Exxon Mobil.
22          THE COURT:  You're certainly welcome, and I see we
23   have a chair for you.
24          MR. CONLON:  Thank you.
25          MR. ROSE:  Good morning, your Honor, Alan Rose for
```

```
 1    the nonparty subpoena recipients, Matthew Pawa and Pawa
 2    Law Group.
 3         MR. MORIELLO:  Antonio Moriello for Pawa Law Group
 4    and Matthew Pawa.
 5         MR. CHINITZ:  And Michael Chinitz for Pawa Law
 6    Group and Matthew Pawa.
 7         THE COURT:  Please be seated.
 8         Let me tee this up a little bit.  Late morning
 9    yesterday I received a copy of the order of my Texas
10    colleague staying all discovery in this case and that
11    led me to think that the issues in this hearing were
12    moot, and so I asked Ms. Gaudet to reach out to you and
13    say, "Well, isn't everything moot?  Let's not have a
14    hearing," and that was okay with Exxon, but not okay
15    with Pawa.  And both of you who have sent letters, I've
16    read the letters and I have slightly revised my thinking
17    and we'll docket the letters.  It's Pawa who wanted the
18    hearing, so let me talk to you folks.
19         This is how I look at this.  Okay, we've got two
20    judges.  I know you're not a party to this, and maybe
21    you're not a party to the underlying matters at all,
22    something that seems to be in dispute --
23         MR. ROSE:  We're not.
24         THE COURT:  I understand that's your position, but
25    we've got two excellent judges, and I know Justice
```

1  Brager in the Massachusetts Superior Court wrestling
2  with the underlying dispute.  So now there's no
3  discovery in the federal court.
4      Your letter convinces me the matter is not moot,
5  but it's still not timely, it seems to me, because with
6  the discovery stayed, um, I don't really know that I'm
7  in a position to adjudicate anything.  Yes, you say
8  you've invested money and you say the subpoena's way out
9  of line, I hear that, but my disposition is to
10 administratively close this matter -- and this is a case
11 here now, it's my case, it involves you, to
12 administratively close it to be reopened by either party
13 upon the lifting of the stay, the resolution or
14 adjudication of either of the underlying cases, which,
15 um, might change the legal posture of the parties, and I
16 at least have the advantage of having an adjudication by
17 judges who are involved in the underlying dispute.
18      Now why shouldn't I do that?
19      MR. ROSE:  Here's why, your Honor, and very
20 respectfully.
21      Mr. Pawa is an environmental litigator --
22      THE COURT:  Right, I've read the papers.
23      MR. ROSE:  All right.  Every day, every week,
24 every month that the subpoenas remain outstanding
25 furthers the chilling effect on his First Amendment

1   rights and his practice as a lawyer.  The effect of the
2   subpoenas -- the net effect of the subpoenas, taking
3   into consideration Requests 5 and 6 in both subpoenas,
4   the instructions and the definition sections mean that
5   every communication that Mr. Pawa has with any Assistant
6   Attorney General across the country -- say nothing about
7   Healey, across the country, is subject to production
8   under the subpoenas until the Texas litigation is
9   finally concluded.  That is the result from looking at
10  the instructions in the subpoena, Requests 5 and 6 --
11         THE COURT:  The Texas judge -- the Texas judge has
12  stayed all discovery and subpoena practice is subject to
13  judicial oversight, and my proposed order, if the stay
14  is lifted -- and I'm not going anywhere, no one's lost
15  any rights, then I have jurisdiction over these parties.
16  Exxon came into this court wanting an enforcement of
17  these, you say, improper subpoenas, and I have
18  jurisdiction -- you're a Massachusetts law firm, your
19  client, and so I have jurisdiction, and I was commencing
20  to get ready for this hearing.
21         Now, it seems to me I'm going to be able to give
22  you a hearing -- it's like you're environing the
23  subpoena with more, in the real world, power than it in
24  fact has, it's a subpoena that's been stayed by a judge,
25  a United States District Judge.

1    MR. ROSE: Your Honor, respectfully, the subpoenas
2 are still outstanding, they have not been withdrawn
3 notwithstanding the fact of the judge's orders in Texas.
4    THE COURT: But they can't be enforced.
5    MR. ROSE: I understand that they can't be
6 enforced, but the very existence of those subpoenas,
7 your Honor, until they're withdrawn, means that there's
8 a chilling effect on Mr. Pawa. We have provided the
9 Court with two declarations from Mr. Pawa, but even more
10 importantly two declarations from other parties,
11 Ms. Gleason and Ms. Spalding, and the -- and Ms. Gleason
12 says there's a matter on which she wants to consult with
13 Mr. Pawa, but how can she when Exxon is essentially
14 trying to get at all communications with third parties?
15    THE COURT: How is that different -- as a
16 practical matter, how is that different from the, um,
17 normal run of background noise to any public interest
18 litigation that may touch upon the rights -- and they
19 are rights, of major corporations that have the
20 wherewithal to bring lawsuits? It's the judicial power
21 that regulates subpoenas and here a judge of competent
22 jurisdiction, who is familiar with the underlying
23 dispute, has stayed all discovery. I -- it would be
24 supererogatory for me, and indeed I think officious for
25 me to now start getting into the merits of this

1   litigation especially where I'm not saying "I dismiss
2   this," I'm not paying any attention.  There's also the
3   various -- they're saying here, "Well, send it to Texas"
4   or "Send it somewhere else."  I'm not saying anything.
5   And not saying anything, but being available promptly to
6   act on this dispute, seems to give you the best you can
7   possibly have.
8           MR. ROSE:  The best we can possibly have, your
9   Honor, would be the allowance of the motions to quash in
10  view of the -- what we regard, and we think we've proven
11  it in the papers, the wholesale violations of Rule 45.
12  But I have a question.
13          THE COURT:  But let me just push back on that, but
14  I am eager to entertain your question.  But if I were to
15  do that, you see, I'd have to get into the merits.  It
16  is at least conceivable -- I know you don't like it, but
17  it is at least conceivable that Exxon might prevail
18  across the board here.  Either I transfer the whole
19  thing or I say, "No, these subpoenas are perfectly fine
20  and they can be enforced," the mind, the human mind can
21  conceive that, and it seems the better part of value to
22  stay in the wings understanding your not-frivolous
23  concerns here.
24          And your question?
25          MR. ROSE:  The question is what is the Court's

1  ruling on Exxon's motion to transfer?  The cases say
2  that under Rule 45F --
3       THE COURT:  It's not a ruling, I propose to --
4  well, I haven't done anything yet, but I don't propose
5  to have a ruling, I propose administratively to close
6  the case, to reopen it on certain -- I may not have all
7  the significant events, but it would seem that it could
8  be reopened the instant that discovery, um -- the
9  discovery stay is lifted, or, because this thing
10 shouldn't just hang out there, if the underlying case
11 were to settle, or be adjudicated by either the
12 Massachusetts Superior Court or the Northern District of
13 Texas.  If I get some adjudication, then at least -- and
14 while it doesn't bind you in any way, it could well bind
15 Exxon in an issue-preclusive sense, and I would then be
16 able to rely on what that other judge had done relative
17 to Exxon.
18      MR. ROSE:  I'm very concerned, your Honor, about
19 the -- the pendency of the motion to transfer.  Exxon
20 wants all rulings in this matter to be made by the judge
21 in the Northern District of Texas.  Rule 45 imposes a
22 duty on this court.  Absent exceptional circumstances
23 under Rule 45F, which are very very limited --
24      THE COURT:  Mr. Rose, I know you know this, but I
25 will tell you.  I understand what my duties are and, um,

Case 1:16-cv-12504-WGY   Document 36   Filed 01/17/17   Page 10 of 13

10

```
 1   in point of fact I am a visiting judge in the Western
 2   District of Texas.  Judge Kinkeade is, in some respect,
 3   he is of course a colleague as a United States District
 4   Judge --
 5           MR. ROSE:  I understand.
 6           THE COURT:  -- and he is a colleague in -- at
 7   least in my visiting capacity in an adjoining federal
 8   district.  Having said all that, um, I have jurisdiction
 9   over these parties in these matters and I propose to
10   enter the orders that, in the wise discretion of this
11   court, I think is appropriate.  I just don't think today
12   is the appropriate time.  You can argue that and we'll
13   hear from Mr. Frongillo as to transfer.  He can't
14   transfer it.  He couldn't transfer it out from under me,
15   he couldn't act on a motion to transfer and somehow have
16   that bind me, that isn't how courts work.  The matter is
17   before me.
18           MR. ROSE:  I understand -- I understand that, your
19   Honor.
20           THE COURT:  All right.
21           MR. ROSE:  The motion to transfer, of course, was
22   directed to this court, under 45F, to transfer the
23   entire matter, all the motions to Texas, and we of
24   course oppose that.
25           THE COURT:  Oh, believe me, I understand you
```

Case 1:16-cv-12504-WGY   Document 36   Filed 01/17/17   Page 11 of 13

11

oppose it, but it is a matter within the competency of this court, the District of Massachusetts.

MR. ROSE: Your Honor, we accept -- we accept the Court's proposal with the understanding that at the appropriate time, if there is a discovery order issued in Texas which for some reason has the effect of reinstating these subpoenas, then we will be back before you for a ruling on the merits.

THE COURT: Of course you will and, um, I express no opinion at all, but I can see that it's my duty to be available. I didn't flippant say "I'm not going anywhere," the matter, I propose to administratively close it. It can be reopened on motion of either party if the discovery stay is lifted, the underlying cases are either adjudicated -- because that may change the legal landscape, or settled, because your rights are independent of the rights of the litigants in the underlying cases. Now that's the proposed order.

I haven't heard at all from Exxon, but I imagine, given the posture you've taken, um, that you understand such an order and you're fine with it?

MR. ANDERSON: Yes, Judge, we have no objection to the entry of that order, we think it makes perfect sense to stay this matter. Exxon Mobil is not seeking to transfer this --

```
 1         THE COURT:  I'm not staying it, it's
 2   administratively closed, it may be reopened upon motion
 3   of either party and I've given you the incidences.
 4         MR. ANDERSON:  And, Judge, that makes perfect
 5   sense to Exxon Mobil, we think that is a sound way of
 6   resolving these issues, and it's consistent with how
 7   you're also handling the objections that were raised in
 8   other courts, they're also being placed analogously on a
 9   suspense calendar in the Southern District of New York.
10         THE COURT:  All right.
11         MR. ROSE:  Your Honor, just so I set forth my
12   client's understanding of the effect of the Court's
13   order, I understand the effect of the Court's order is
14   that the subpoenas are not now enforceable.
15         THE COURT:  Well, I will -- I don't know that I
16   made an order, but I think I should state on the record
17   that that is my understanding, and if there were any
18   attempt to enforce the subpoenas against Pawa, which are
19   before me, I would be very surprised and that would be
20   an incident that would bring you back before this Court
21   forthwith.
22         MR. ROSE:  Thank you, your Honor.
23         THE COURT:  All right.  Thank you all.  Good to
24   see you.  We'll recess.
25         (Ends, 10:30 a.m.)
```

```
 1                C E R T I F I C A T E
 2
 3
 4
 5      I, RICHARD H. ROMANOW, OFFICIAL COURT REPORTER,
 6   do hereby certify that the foregoing record is a true
 7   and accurate transcription of my stenographic notes
 8   before Judge William G. Young, on Friday, December 16,
 9   2016, to the best of my skill and ability.
10
11
12
13
14
15   /s/ Richard H. Romanow 01-17-17
     _____
16   RICHARD H. ROMANOW    Date
17
18
19
20
21
22
23
24
25
```